THE TOWN OF PAWLET *v.* THE RUTLAND & WASHINGTON RAILROAD COMPANY.

*Master and servant. Liability of railroad company for acts of sub-contractors.*

The liability of a master for the acts of his servants grows out of, and is measured by the control of the former over the latter; and for the want of such control the principal will not ordinarily be liable for the acts or neglect s of the employees of a sub-contractor under a contractor employed by him to do a specified work.

The defendants contracted with P. & E. to construct certain sections of their rail-

road; and they sub-contracted with C. to erect certain abutments thereon. A servant of C., in drawing stone for such abutments, left one in the highway, by reason of which one P. was injured, and recovered of the plaintiffs for the damage sustained by him. In an action to recover of the defendants the damages to which the plaintiffs were so subjected, *it was held* that the defendants had no control over the servant of C., and that no privity existed between them; and that the defendants were therefore not liable.

*Quaere*, as to the present authority of *Bush* v. *Steinman*, 1 B. & P. 404, and the cases founded upon it.

ACTION ON THE CASE to recover the amount the plaintiffs had, been compelled to pay on a judgment recovered against them by one Willis Phelps, for an injury sustained by him in consequence of the insufficiency of a highway in the town of Pawlet, and the expenses incurred by the plaintiffs in defending said Phelps' suit; which insufficiency of the highway the plaintiffs alleged was occasioned by the defendants placing and piling in said highway, divers rocks and stones to be used in constructing defendants' railroad, and railroad bridges, and suffering the same to remain there for a long space of time. Plea, the general issue; and trial by the court, March Term, 1855,—PIERPOINT, J., presiding. The Rutland & Washington Railroad Company located their railroad through a portion of the town of Pawlet; said railroad as located, crossed a highway running east and west, and, after crossing said highway, crossed a stream known as Indian River, the north bank of which was some feet south of the highway in said town of Pawlet. The defendants entered into a contract with Messrs. Page & Eastman, to build, construct and complete to running order, all of said railroad lying south of the state line in Poultney, including all that part of the railroad lying in Pawlet; said Page & Eastman entered upon the execution of their contract, and in the prosecution of the work, they let the job of building the abutments for the bridge across said Indian River to one Hiram Chandler. Chandler with his own men commenced and completed the structure of the abutments. The stone used in the construction of the abutments were quarried by the laborers of Chandler, at some distance from the bridge, and drawn by teams over the aforesaid highway, and were deposited, a part on the north, and part on the south side of the river, in convenient positions to be used in building the abutments. In drawing the stone from the quarry to the abutments, one of Chandler's men was hauling a large stone on a wag-

on, and when on said highway the wagon broke down, and the stone was left lying on the highway. The stone was moved a small distance north from where it fell, so as to remove it further from the traveled path of the highway. It was then left there for about a week or ten days, when said Phelps run his wagon against it, occasioning the injuries for which he recovered his judgment against the town of Pawlet. The spot where the stone fell from the wagon, and where it was left, was not where the stone was intended to be placed for building the abutments, nor was it in the limits of the railroad. There was no other evidence than the facts above stated to connect the defendants with the placing and leaving said stone in said highway, and they insisted that the plaintiffs could not sustain this suit against them; but the court decided otherwise, and held said company liable for placing said stone in the highway as aforesaid. Exceptions by the defendants.

*C. L. Williams* and *J. B. Beaman* for the defendants.

*E. Edgerton* for the plaintiffs.

The plaintiffs' right of recovery is sustained by the cases of *Duxbury* v. *Vt. Central R. R. Co.* 26 Vt. 751, citing *Newbury* v. *Conn. & Pass. R. Co.*, not reported; *Lowell* v. *Boston & Lowell R. Co.*, 23 Pick 31.

The opinion of the court was delivered by

BENNETT, J. The question in this case is important, as a practical one, though not, I apprehend, attended with any intrinsic difficulty. The plaintiffs had been compelled to pay to one Phelps, a sum of money to compensate him for damages sustained by him by reason of the insufficiency of a highway, which the town were bound to keep in repair; and the object of this suit is to recover an indemnity of the railroad company. The defendants had located their road through a part of the town of Pawlet; and they made a contract with Page & Eastman to build, and complete to running order, a section of their road, including that section of it which was located in the town of Pawlet. Messrs. P. & E. underlet a job of building the abutments of a certain bridge in Pawlet to Chandler; and C., with his own men, built the abutments; and the

obstruction in the highway, which caused the injury to Phelps, was the act of C's. employees in drawing the stone for the abutments ; and the question is, can the railroad company be held responsible for the negligence of the employees of C., in leaving the stone, which caused the injury, in the highway ?

The general principle is, that a master is liable for the tortious acts of his servant, *which were done in his service ;* and this responsibility of the master grows out of, and is measured by his control over his servants ; and in fact it begins and ends with it, although there are cases where the rule has been satisfied with a slight degree of actual control over the servant. Without the existence of this essential element of control and direction over the servant, it is difficult to discover any principle which can, in law, make the acts of the servant the acts of the master. Though it may be assumed, in the case before us, that a public nuisance had been committed by the servants of the sub-contractor, and a particular injury had resulted therefrom to Phelps, and for which the town had been compelled to make satisfaction, yet we cannot discover any *privity* existing between the defendants and the employees of the sub-contractor. The contract made, for the building of the abutments to the bridge, was for a lawful purpose, and in no way involved the commission of a wrong, and the employees of the sub-contractor were not the servants of the defendants, or under their control.

There are no particular facts in this case to connect the defendants with the employees of the sub-contractor, and to make them the servants of the defendants, unless it necessarily grows out of the relation which, it may be claimed, exists between the defendants and this sub-contractor. In *Allen* v. *Hayward,* (7 Queen's Bench, 960,) it was held, that if negligence be committed in the performance of a piece of work, undertaken under a *special contract,* the *contractor* is *only* liable for the negligence.

So in *Reedie* v. *North Western Railroad,* 4 Exch. Rep. 244, the rule was laid down, that the owner of fixed property was not liable for the negligent acts of the servants of a contractor, who had agreed with the owner to execute certain works upon the property.

The case of *Knight* v. *Fox et al.* 5 Exch. Rep. 721 is strongly in point. In that case a railroad company had made a contract with a person to build a section of their road, and this person had

contracted with another person to build a bridge on that section; and in consequence of the neglect of the employees of the sub-contractor, a third person sustained damage; yet it was held that the contractor was not liable to such person for the negligence of the employees of the sub-contractor. Much less would the railroad company have been liable.

In *Peachy* v. *Rowland et al.* 16 Eng. Law & Eq. Rep. 442, the defendants had made a contract with an individual to fill in the earth over a drain, which was to be made for them over a highway; and the earth was left by this individual in such a situation as to occasion the injury to the plaintiff; and yet it was held the defendants were not liable for his neglect.

The act which was to be done was a lawful one, and in no way involved the commission of a public nuisance; but it became so, purely from the neglect of the person who had contracted to do the job; and upon this ground, it was held that he *alone* was liable for the damage occasioned to the individual. It was at one time supposed that a distinction might well be taken between the owner of real estate as contradistinguished from the owner of a personal chattel, and that the former was liable on some peculiar ground for injuries resulting from the negligent conduct of any one, in the management of such property; but by the later cases such distinction seems to have been disregarded; and the question has been made to turn upon the ground, whether the person guilty of the negligent act which occasioned the injury, could be regarded as the servant of the person sought to be charged with the payment of the damages.

There may be some cases, however, where the owner of real estate may be made liable for damages done in the management of it, for the want of due care to prevent damage; as in the selection of incompetent persons to do the job. The rule of law, "*Sic utere tuo, et alienum non laedas,*" may well apply in such a case.

The case of *Bush* v. *Steinman*, 1 B. & P. 404, and other English and American cases founded upon that case, must be regarded as much impeached, if not overruled by subsequent cases. Those who wish further to examine this subject may be referred to 6 M. & W. 499; 9 M. & W. 710; 4 Exch. Rep. 244; 12 Adolp. & Ellis, 737; 7 Queen's Bench. 960; 10 M. & W. 109.

In the case before us, the railroad company had contracted with Page & Eastman to build, and complete to running order, a section of their road, including all that part located in the town of Pawlet; and, in the prosecution of their job, they had let the building of the abutments for the bridge across Indian River, to Hiram Chandler; and the injury was produced by reason of the negligence of the hired men of Chandler, who drew the stone. The case finds, that Chandler and his men completed the abutments; and there was nothing further in the case to connect the railroad company with the negligent act of the hired man of Chandler, which occasioned the injury. The hired men of Chandler were in no way under the control of the railroad company; and they cannot be said to have *impliedly sanctioned the negligence.*

The judgment of the county court is reversed, and the cause remanded.